IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

RAY REED                                                                                              PLAINTIFF

V.                                                             CIVIL ACTION NO. 4:14-CV-176-SA-JMV

CHIEF PATRICK JOHNSON,
ADMINISTRATOR ZAKIYA FIELDS,
CITY OF SHELBY, MISSISSIPPI POLICE DEPARTMENT, and
OFFICER A. WILLIAMS                                                                       DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Ray Reed, proceeding *pro se*, initiated this action pursuant to 42 U.S.C. § 1983 against the Shelby Police Department, Shelby's Police Chief, another Shelby Police Officer, and Zakiya Fields. Before the Court at this time is Fields' Motion to Compel Arbitration [15]. The Court has considered the motion, responses, and pertinent authorities, and finds as follows:

*Factual and Procedural Background*

This suit arises from allegations that Officer A. Williams of the Shelby Police Department unlawfully searched Reed's residence at the Shelby Health and Rehabilitation Center. According to the complaint, Reed woke up on July 19, 2014 to find Officer Williams in his room. Reed alleges he asked Officer Williams "Why are you in my room? I didn't call for you," but that Officer Williams searched Reed's closet, suitcase, and drawers for evidence of illegal narcotics. Reed complains that he requested to see a warrant, and that Officer Williams retorted, "My gun is my warrant." As relevant to this motion, Reed contends that Defendant Fields, the administrator of Shelby Health and Rehabilitation Center, initiated the search. Plaintiff requests $75,000 from each Defendant in compensatory and punitive damages.

Fields moved to compel arbitration, representing that as part of Reed's admission into the nursing home, Reed signed a document labeled in bold print and all capital letters,

"AGREEMENT TO ARBITRATION OF ALL CLAIMS." The document is two pages long and states that it "is made between Shelby Health and Rehabilitation Center . . . its agents, employees and servants, and Reed, Ray . . . ." It further provides:

> To the extent that the Grievance Policy and Procedures referred to in the Admission Agreement fail to provide resolution, the parties to this agreement agree that any . . . claims that arise out of or relate to actions, omissions, errors, practices, incidences or occurrences causing injury or damages (either physical, mental and/or economic or any other type of injury or damages) to either party whereby the other party or its agents, employees or servants may be held liable, shall be settled exclusively by binding arbitration administered by the American Arbitration Association under its most recent version of its Commercial Dispute Resolution Procedures, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. However, the parties agree that any claims by either party with a value of less than $15,000 . . . are not subject to this arbitration agreement and may be brought in any court having jurisdiction.

At the bottom of the document, Ray Reed's name is written on the signature line, and it is dated May 10, 2013.

Reed has made three arguments over the course of the proceedings as to why the arbitration agreement should not be enforced. As a threshold matter, Reed contends that the signature on the arbitration agreement is not his. To resolve this issue, the Court held a bench trial on February 18, 2016. By separate memorandum opinion and order issued this day, the Court found that Reed signed the agreement.

Reed alternately argues that he did not recall signing the arbitration agreement and was not given an opportunity to review the agreement in detail. This is best viewed as an argument that the agreement is void for procedural unconscionability. He also asserts that the chosen forum for this dispute, the American Arbitration Association, is unavailable because it refuses to arbitrate certain post-agreement healthcare disputes. Having resolved the signature issue in favor of Fields, the Court proceeds to these remaining enforceability issues.

*Motion to Compel Standard*

The Federal Arbitration Act ("FAA") provides that written provisions for arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed . . . absent a ground for revocation of the contractual agreement." *Dean, Witter, Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). State law governing contracts may be applied to invalidate an arbitration provision "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996) (quotation omitted). However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

In determining whether a party should be compelled to arbitrate, this Court employs a two-step analysis. *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008). First, the Court decides if the party has agreed to arbitrate the dispute. *Id.* The Court then determines whether there is any federal statute or policy that renders the claims nonarbitrable. *Id.* Neither party argues the presence of a federal statute or policy that would bar arbitration, and thus the Court's discussion is limited to the first prong of the analysis.

To decide whether parties have agreed to arbitrate a dispute, the Court considers two issues: (1) whether there is a valid agreement to arbitrate the claims, and (2) whether the dispute

in question falls within the scope of that arbitration agreement. *Id.* These issues are controlled by "ordinary state-law principles that govern the formation of contracts." *Graves v. BP America Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). No party disputes that Reed's allegations against Fields fall within the broad language of the agreement. Thus, Reeds arguments here relate to validity, rather than scope.

*Discussion and Analysis*

**Procedural Unconscionability**

An unconscionable contract, as defined under Mississippi law, is one that "no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." *Pride v. Ford Motor Co.*, 341 F.Supp. 2d 617, 622 (2004) (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). There are two types of unconscionability, (1) substantive and (2) procedural. *York v. Georgia-Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive, *York*, 585 F. Supp. at 1278, or one-sided, *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 607-09 (Miss. 2014). Procedural unconscionability—or unfairness in the contracting process—can "be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *Vicksburg Partners, LP v. Stephens*, 911 So. 2d 507, 517 (Miss. 2005) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000)), *overruled on other grounds by Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss.

2009). Reed's arguments relate to unconscionability in the contracting process, not to the substantive content of the agreement.

Reed primarily relies on the circumstances surrounding the agreement's execution. He claimed that when he arrived at the Shelby Health and Rehabilitation Center, he was immediately directed to the social services office to sign paperwork. Reed stated that while signing papers, he was simultaneously being introduced to multiple nursing home staff members, which required him to repeatedly turn and shake hands. Reed further stressed that he was "very fatigued" when signing the papers, as he had just traveled approximately three hours in a van while sitting in his motorized wheelchair.

Nevertheless, Reed admitted during an August hearing before the magistrate judge that before signing the intake documents, he made no requests for time to review them, for a chance to rest, or for any other accommodation. And in any event, the circumstances identified would not rise to the level of procedural unconscionability. *See Mason*, 966 So. 2d at 230 (finding evidence that the plaintiff was in a "generalized weakened physical state" to be insufficient to demonstrate unconscionability).

Further counseling against a finding of procedural unconscionability are the layout and content of the arbitration agreement. The agreement Reed signed contains several key aspects that Mississippi state and federal courts have consistently relied upon in upholding arbitration agreements against procedural unconscionability arguments. For one, this arbitration agreement is conspicuous, appearing in large, bold print in a separate two-page document entitled "AGREEMENT TO ARBITRATION OF ALL CLAIMS." *See Stephens*, 911 So. 2d at 520 (finding arbitration provision to be "easily identifiable" and "printed in bold-face type of equal size or greater" than the print in the remainder of the arbitration agreement); *La. Extended Care*

*Ctrs., LLC v. Bindon*, No. 2014-CA-01282-COA, 2015 WL 7729633, at *4 (Miss. Ct. App. Dec. 1, 2015) (noting the arbitration language was "typed in the same print as the remaining provisions of the admission agreement"); *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 785 (Miss. Ct. App. 2008) ("The [arbitration] section heading is in bold-face type . . . ."); *Cook v. GGNSC Ripley, LLC*, 786 F. Supp. 2d 1166, 1173 (N.D. Miss. 2011) ("This explanation was written in large printed capital letter and in boldface.").

The agreement also clearly notified Reed that he "had the right to seek legal counsel" and that by signing, he was waiving "the right to a trial before a judge or jury." *See Bindon*, 2015 WL 7729633, at *4 ("[The parties] were free to obtain advice of counsel before signing the agreement[.]"); *McFarlan*, 995 So. 2d at 785 (noting language informing party that he was "giving up [his] constitutional right to have a claim decided before a judge and jury" and entitled "to seek legal counsel"); *Cook*, 786 F. Supp. 2d at 1172-73 (upholding agreement where there was explanation that parties were waiving "their constitutional right[s] to have any claim decided in a court of law before a judge and jury."). And this information was described to Reed in plain English, not in legalese. *See McFarlan*, 995 So.2d at 785 ("The wording . . . is not presented in complex legalistic language."); *Cmty. Care Ctr. of Vicksburg, LLC v. Mason*, 966 So. 2d 220, 230 (Miss. Ct. App. 2007) (noting the "non-legalistic language used"). Thus, the agreement itself militates against a finding of procedural unconscionability.

Finally, any argument that Reed did not know what he was signing is not sustainable. A contracting party's "legal obligation to read a contract before signing it" is well established under Mississippi law. *Terminix Intern., Inc. v. Rice*, 904 So. 2d 1051, 1056 (Miss. 2004) (citing *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 455 (Miss. 2004)). This duty to read equally applies to arbitration agreements executed upon admission to a nursing facility.

*Trinity Mission of Clinton, LLC v. Barber*, 988 So. 2d 910, 921 (Miss. Ct. App. 2007). Because the Court has found that Ray Reed signed the arbitration agreement, he cannot now complain that he did not know what he was signing. *Id.*

For these reasons, Reed has failed to present evidence demonstrating that the contracting process was unfair as to void the agreement for procedural unconscionability.

**Forum Availability**

A final issue, first noticed by the magistrate judge and since argued by Reed, is whether the forum selected for arbitration is available to hear this dispute. Since 2003, the American Arbitration Association ("AAA") has maintained a policy of refusing healthcare arbitrations between patients and healthcare service providers where the dispute arises after the agreement was signed. This refusal, Reed contends, precludes enforcement of the arbitration contract.

An arbitration agreement is fundamentally a "choice of forum . . . ." *Stephens*, 911 So. 2d at 525. When the chosen forum refuses to arbitrate the dispute at issue, the primary purpose of the arbitration contract is thwarted and the agreement is unenforceable. *Covenant Healthcare*, 14 So. 3d at 706-09. Thus, if the AAA truly refused to arbitrate this dispute, the Court would have no choice but to deny Fields' motion to compel. *Id.* However, the AAA is an available forum for this dispute for two independently sufficient reasons.

First, the AAA's current Healthcare Policy statement only restricts arbitration of post-arbitration *healthcare* cases. It provides in part:

> In 2003, the American Arbitration Association ("AAA") announced that it would not administer healthcare arbitrations between individual patients and healthcare service providers that *relate to medical service*, such as negligence and medical malpractice disputes, unless all parties agreed to submit the matter to arbitration after the dispute arose.

7

AAA Healthcare Policy Statement, at 2 [22-2]. (emphasis added). Reeds alleges he was subject to an illegal search for narcotics. He does not assert medical negligence, medical malpractice, or any other claim arising from medical service. Thus, the AAA's ban does not apply to this type of case.

And second, even if the dispute did relate to "medical service," it would fit within an exception to the AAA's ban. Beneath the general prohibition of healthcare arbitrations, the AAA policy reads, in pertinent part:

> However, the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration.[1]

AAA Healthcare Policy Statement, at 2 [22-2].

In accordance with this exception, the subject arbitration agreement calls for administration "by the American Arbitration Association under its most recent version of its Commercial Dispute Resolution Procedures . . . ." Thus, if this Court grants the motion to compel and orders the case to arbitration, the AAA will administer the arbitration notwithstanding the general prohibition discussed above. *See Owens v. Nexion Health at Gilmer, Inc.*, No. 2:06-CV-519-DF, 2007 WL 841114, at *3 (E.D. Tex. Mar. 19, 2007) (compelling arbitration to American Health Lawyers Association notwithstanding association's general refusal to administer consumer health care liability arbitrations, where association rules provided that arbitration will be administered if "a judge orders that the [association] administer an arbitration . . . ."); *see also Covenant Health*, 14 So. 3d at 706-07 (suggesting that exception to

---

[1] This stated exception is apparently a new development. Though there is no expressly listed date, the metadata from the AAA's website shows the current statement document was created on November 11, 2014. The previous version, considered by the Mississippi Supreme Court in *Covenant Health* and in a more recent case, *N.C. Leasing, LLC v. Junker*, 172 So. 3d 155, 160 (Miss. 2015), did not include the exception.

8

general prohibition like that in *Owens* would provide available forum for arbitration). Reed's forum availability argument is without merit.

*Conclusion*

The Court finds that the arbitration agreement was signed by Reed, is not void for unconscionability, and is not unenforceable for lack of available forum. For these reasons, Fields' Motion to Compel [15] is GRANTED. The Court will order that the American Arbitration Association may administer arbitration in accordance with the subject agreement. Fields is DISMISSED from this lawsuit. A separate order to this effect shall issue this day.

SO ORDERED, this the 9th day of March, 2016.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**